**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 7:26-CV-233 (LAG) |
| GREEN VILLA NORTH LLC, | : | |
| Defendant. | : | |

**STIPULATED ORDER APPOINTING RECEIVER**

On review of this matter, as stipulated by the parties, and good cause appearing, the **COURT FINDS**:

1. Congress chartered the Federal Home Loan Mortgage Corporation (Freddie Mac or Plaintiff)[1] to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1451. The Housing and Economic Recovery Act of 2008 (HERA), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq*.), established the Federal Housing Finance Agency (FHFA or Conservator) as Freddie Mac's primary regulator.

2. On September 6, 2008, pursuant to HERA, the Director of FHFA placed Freddie Mac into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all of Freddie Mac's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). As Conservator, FHFA, is statutorily empowered to "preserve and conserve [Freddie Mac's] assets and property," to "operate" Freddie Mac, to "perform all [of Freddie Mac's] functions in [Freddie Mac's] name," and to "collect all obligations and money due" Freddie Mac. 12 U.S.C. § 4617(b)(2)(B)(i)–(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's]

[1] Capitalized terms shall have the same meaning ascribed to them in the Motion, Complaint or Loan Documents as applicable.

powers or functions . . . as a conservator." 12 U.S.C. § 4617(f). Because the Receiver derives its authority from the Court, § 4617(f) also precludes the Receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

3. FHFA has represented to Freddie Mac that FHFA supports the appointment of the Receiver on the terms set forth in this *Stipulated Order Appointing Receiver* (the Order) accompanying Freddie Mac's contemporaneously filed *Stipulated Motion for the Appointment of a Receiver* (the Motion). However, FHFA reserved its rights as to any other or different terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

4. HERA provides that "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." See 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third-party that affects Freddie Mac's interest in the Loan Agreement, Note, or Security Instrument, owned by Freddie Mac or under which Freddie Mac is beneficiary.

5. The Motion is **GRANTED**.

Accordingly, it is hereby **ORDERED**:

6. GlassRatner Advisory & Capital Group LLC, is hereby appointed as receiver (the Receiver) of the real property (legally described in Exhibit A attached hereto), fixtures, and personal property of Defendant Green Villa North LLC, a Delaware limited liability company (the Borrower) in which Freddie Mac maintains a security interest pursuant to that certain Multifamily Deed to Secure Debt, Assignment of Rents, and Security Agreement (the Security Instrument) dated effective as of March 25, 2021, and recorded on March 26, 2021, in the Superior Court of Thomas County, Georgia at Book 2374, Pages 289–312 (collectively, the Property). Within **ten (10) days** from the date of this Order, Receiver shall file a Receiver's bond in the amount of ten thousand dollars ($10,000), insuring faithful performance of Receiver's duties as hereinafter provided.

7. Receiver shall take physical possession, and have exclusive control of the Property, including but not limited to all land, buildings, structures, leases, leasehold

interests, fixtures, and moveable personal property that is a part of the Property or is located thereon, plus all accounts, including bank, security deposit, and operating accounts, all rents, prepaid rents, security deposits, and income thereof, insurance, condemnation awards, payments, and proceeds (collectively, Rents, Issues, and Profits), whether held or maintained by Borrower or any other person or entity.

8. Until further order of this Court, Receiver shall hold and maintain the Property in good condition and repair, reasonable wear and tear excepted, and shall collect the Rents, Issues, and Profits, the same to be held and disbursed pursuant to the terms of this Order.

9. All tenants or other persons now or hereafter occupying any part or parts of the Property shall, for as long as Receiver is in control of the Property pursuant to this Order, make all payments under their leases or arising out of their occupancy or use of the Property, including, but not limited to, payments now due or past due, and those that come due hereafter, directly to Receiver or Receiver's representative(s). Such payments shall constitute *pro tanto* (dollar for dollar) discharge of said persons' payment obligations under their leases or other use or occupancy arrangements. Receiver may, in consultation with Freddie Mac, institute and prosecute suits or summary proceedings:

(i) for the collection of rents, income, or other amounts; and

(ii) to evict tenants in breach of their lease agreements in accordance with the terms of such lease agreements and applicable law.

10. Receiver shall market the Property for lease to potential tenants, and may, without further Court order, negotiate, and enter into leases containing reasonable rental terms, and conditions as may exist from time to time for similar properties available in Thomas County, Georgia. Receiver also may take such reasonable action as Receiver shall deem necessary to enforce, modify, or terminate all leases currently in place on the Property, and those which may hereafter be made by Receiver.

11. Receiver shall pay all costs and expenses of the Property incurred subsequent to the date of this Order, including, but not limited to, utilities, insurance premiums, expenses of repair, replacement, maintenance, real estate brokerage or other leasing fees, Property management fees, taxes, and assessments levied against the Property, all such payments to

be made from Rents, Issues, and Profits collected or received. Unless deemed necessary by the Receiver to preserve or maintain the Property, Receiver shall not, without prior approval of Plaintiff or the Court, pay or agree to pay for expenses of the Property incurred by Borrower prior to the date of this Order. Receiver shall not, without prior approval of Plaintiff, make capital improvements or substantial repairs exceeding ten thousand dollars ($10,000) for one repair to the Property, except in case of life safety emergency issues, to heat or cool the Property, supply hot water to the tenants of the Property, or to comply with the requirements of any municipal department or other authority of the State of Georgia. Notwithstanding the foregoing, neither Receiver nor its agents shall have responsibility for preparing and filing tax returns of any kind on behalf of Borrower nor any responsibility for paying taxes (other than real property taxes and other taxes levied against the Property as provided herein) assessed on Borrower for any and all years prior to and during the Receivership or thereafter, all of which shall be the responsibility of Borrower.

12. Any utility company providing service to the Property shall not, without prior order of this Court, discontinue or terminate such service based on the status of payment on an account for the Property maintained by any defendant or agent thereof. Receiver also shall not be required to make any deposit or advance payment as a condition of receiving utility services; provided that Receiver shall not request or accept services if Receiver knows or believes the assets of the Receivership will be insufficient to pay for such services.

13. All Rents, Issues, and Profits collected or received by Receiver shall first be applied to the costs of taking control of, and managing the Property, and collecting the Rents, Issues, and Profits thereof, including, but not limited to, attorneys' fees, Receiver's fees, costs of repairs to the Property, premiums on insurance policies except for the Receiver's Business Insurance policy (*see paragraph* 31), taxes, assessments, amounts due on liens senior to the lien of Plaintiff, and other charges on the Property, and to the costs of discharging any other obligations of Receiver. Subject to Plaintiff's approval, Receiver also may draw on any reserve and repair escrow account being maintained by Plaintiff under the Loan for the benefit of the Property, such funds to be used to preserve, maintain,

and repair the Property. Receiver may make any claims, arising both before and after the date of this Order, under any insurance policy insuring the Property, and collect any insurance proceeds resulting therefrom.

14. The cost of the Receiver's bond and any renewals or extensions thereof shall not be an expense of the receivership estate (the Receivership Estate).

15. Receiver is authorized to employ, and pay for such property managers, rental agents, on-site managers, accountants, attorneys, security guard services, maintenance services, contractors, and providers of materials and supplies as may be reasonably necessary to carry out the duties and satisfy the responsibilities of Receiver. Subject to Freddie Mac's rights set forth in this paragraph, Receiver is authorized to enter into contracts and agreements for the operation, maintenance and repair, and security of the Property, and to perform the duties of Receiver for the Property and Receivership Estate (Contracts), including Contracts with professionals (general and special counsel, accountants, property managers, leasing agents and brokers, accountants, counsel, maintenance workers, technical experts, consultants, agents, employees, investigators, engineers, construction vendors, security guards, insurance agents, tax appeals consultants, and any other persons reasonably deemed by Receiver to be necessary or advisable to assist Receiver in performing its duties hereunder), and is authorized to pay expenses and charges under such Contracts from funds generated from the Property (Property Funds) held by Receiver or from other funds available to Receiver, subject to the provisions of paragraphs 13 and 28 herein. Receiver may amend, modify or terminate any Contracts, or any existing contracts or agreements for the Property entered into prior to the date of this Order that Receiver determines not to be beneficial to the duties of Receiver for the Receivership Estate. The Receiver shall not be bound by any existing contract or agreement entered into by the Defendant or any prior property manager that Receiver does not expressly assume in writing. Freddie Mac shall be provided advance written notice at least **five (5) business days** prior to the Receiver entering into any proposed Contract, or any proposed modification to an existing Contract, under which the Receiver's obligation exceeds or reasonably could exceed twenty-five thousand dollars ($25,000), before it is executed.

Upon receipt of such notice, Freddie Mac shall have **three (3) business days** to approve the proposed Contract, which notice shall specify the terms of the proposed Contract, the fees and costs thereunder, and whether the fees and costs thereunder are consistent with the current budget provided by the Receiver. Proposed Contracts that exceed the twenty-five-thousand-dollar ($25,000) limit set forth in this Order shall not be valid, and shall be of no force and effect, unless and until Freddie Mac approves.

16. Receiver is authorized to market the Property for sale and to sell the Property subject to:

(i) approval by Freddie Mac and the Court (following notice to all parties in interest, including Defendant), and

(ii) Conservator consent under 12 U.S.C. § 4617(j)(3).

However, Receiver shall not:

(i) enter into any listing or marketing agreements for the sale of the Property,

(ii) terminate any existing listing or marketing agreements for the sale of the Property,

(iii) enter into any sales contracts, or

(iv) terminate any sales contracts without prior written approval by Freddie Mac.

Defendant shall cooperate in all reasonable ways with Receiver, including executing any documents or instruments in conjunction with a sale of all or any portion of the Property that may be approved in accordance with this Order. Defendant hereby waives any and all objections to Receiver's authority to list and market the Property. Receiver shall provide such reasonable information as Freddie Mac requests that is necessary to approve and execute any sale process.

17. Subject to Plaintiff's approval, Receiver is authorized to apply for and obtain any necessary licenses, permits, or approvals of all applicable regulatory bodies and use any existing trade name of the Property and licenses, permits, or approvals of Borrower or its property manager. Receiver is further authorized to use any existing trade name of the Property owned by Borrower or its property manager. If utilization of the trade name

requires any payment of any reasonable fees to an applicable governing authority for any lawful license, permit, or other governmental approval relating to the Property, including to confirm the existence and, to the extent permitted by law, exercise the privileges of any existing license, permit, and other governmental approval, then Receiver is authorized to pay the same.

18. Subject to Plaintiff's approval, Receiver is authorized to employ and pay for tax professionals to appeal the real estate taxes payable on the Property

19. During the term of the receivership, Receiver is authorized to purchase or pay for continuing personal property, real property, and casualty insurance for the Property in commercially reasonable amounts as may be reasonably necessary to carry out the duties, and/or satisfy the responsibilities, of Receiver.

20. On a monthly basis, any excess funds held by the Receiver, as specified in a receiver report, shall be paid first to Plaintiff, or an entity designated by Plaintiff, to reimburse any advances made by Plaintiff, and then any balance shall be paid to Plaintiff to be applied to the underlying Note. Upon termination of the Receivership or sale or foreclosure of the Property, any excess property funds held by the Receiver shall be turned over to Plaintiff to be applied to the underlying Note.

21. Plaintiff's receipt of any payment less than the full amount due shall not constitute a waiver or cure of (i) the default, (ii) acceleration of the principal balance secured, or (iii) any other right granted Plaintiff under the Security Instrument.

22. No later than the twenty-first (21st) day of each month (or the first business day thereafter, if such day falls upon a Saturday, Sunday, or holiday), Receiver shall furnish the parties with a monthly accounting of the Rents, Issues, and Profits collected or received from the Property, and all disbursements made therefrom during the immediately preceding month.

23. No later than **forty-five (45) days** after the date of this Order, Receiver shall furnish the parties with a projection of income, and expenses necessary for the operation of the Property, and a takeover report, including, but not limited to, information regarding

the physical condition of the Property, occupancy, operations, and the preliminary plan to address any Property issues.

24. Upon Plaintiff's or Borrower's request, Receiver shall make available for examination, inspection, and copying, the records, books of account, ledgers, and all other business records related to the Property, wherever located, and in whatever mode maintained.

25. Receiver shall receive reasonable compensation for the performance of Receiver's duties. Receiver shall be paid at the rate of three-hundred-and-fifty-dollars ($350.00) per hour with a minimum charge of three-thousand-and-five-hundred-dollars ($3,500) per month ("Receiver Fee"). Receiver shall be paid for additional receivership services, as necessary, on an interim basis from Property income during the Receivership, subject to final approval of Freddie Mac and the Court. The Receiver's hourly rate and the rates and fees of any entities retained by the Receiver related to the Property must be reasonable and in accordance with industry standards, and must be approved by Freddie Mac in advance of the payment of the Receiver Fee. The Receiver must prepare and provide to Freddie Mac a reasonably detailed invoice including all necessary back-up records documenting the fees incurred each month. Freddie Mac shall have fourteen (14) days after receipt of an invoice to review and approve such fees. Once approved by Freddie Mac, such approved amount of the Receiver Fee may be deducted and paid by Receiver from Property Funds held by Receiver. Subject to the provisions of this Order, Receiver is authorized and empowered, without further leave of the Court, to employ any assistants, agents, managers, or other persons and entities deemed necessary and proper to assist Receiver in diligently executing the duties imposed by this Order including, but not limited to, assisting the Receiver in fulfilling its obligations under this Order, and in managing, insuring, maintaining, preserving, and protecting the Receivership Property that is in the possession or under the care and control of Receiver (collectively, the Management Personnel), upon such terms and conditions as Receiver deems just and beneficial to the performance of Receiver's duties.

26. Defendant, and its officers, directors, general partners, agents, Property managers, architects, contractors, subcontractors, and employees, and all other persons with actual or constructive knowledge of this Order, and their agents, and employees, shall immediately turn over to Receiver:

a. Possession and control of the Property, and the records, books of account, ledgers, and all other business records thereof (including, but not limited to, the plans, specifications, and drawings relating or pertaining to any part or all of the Property), wherever located, and in whatever mode maintained (including, but not limited to, information contained on computers, and any and all software, e-mail accounts, usernames or IDs, passwords or other security information, training manuals relating thereto, banking records, statements, and canceled checks);

b. All documents that constitute or pertain to licenses, permits or governmental approvals that relate to the Property;

c. All documents that constitute or pertain to insurance policies, whether currently in effect or lapsed, that relate to the Property;

d. All leases, and subleases, rent rolls, management agreements, franchise agreements, royalty agreements, licenses, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, that relate to the Property;

e. All documents pertaining to past, present, or future construction of any type with respect to the Property including, without limitation, plans, surveys, and architectural drawings;

f. All documents of any kind pertaining to any and all toxic chemicals or hazardous materials, if any, ever brought, used,

or remaining upon the Property (including, but not limited to, all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings, and notices);

g. Any other documents affecting or pertaining to the use, occupancy, operation or maintenance of the Property;

h. All Rents, Issues, and Profits derived from the Property since the filing of the Complaint (Doc. 1) (including, but not limited to, all security, cleaning, common area maintenance, and other deposits, advances, prepaid rents, storage fees, and parking fees) wherever, and in whatsoever mode maintained;

i. All documents that relate to any current or former employee or other person or entity who performed services at the Property; and

j. All keys (master, copies, and key fobs/cards, and security and/or alarm codes, and including keys to all equipment), supplies, materials, equipment, or any other personal Property used in connection with the operation of the Property.

27. Defendant, its agents, representatives, and employees, shall promptly and fully cooperate with Receiver in connection with the Receiver's performance of its duties and are enjoined from:

a. Interfering with Receiver, directly or indirectly, in the management, operation, and leasing of the Property;

b. Interfering with Receiver, directly or indirectly, in the collection of Rents, Issues, and Profits of the Property;

c. Collecting or attempting to collect the Rents, Issues, and Profits of the Property;

d. Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Property

(including the Rents, Issues, and Profits thereof), without prior written consent of Receiver. Nothing contained in this Order shall prohibit or restrain Plaintiff from initiating, and/or completing a sale by judicial foreclosure of the Property, or any portion thereof, and thereafter taking title, and possession thereto, or taking title to the Property by other means;

e. Commencing, continuing, or joining in any action, suit, proceeding or arbitration, of any kind or nature, at law, in equity or mixed, or seeking to enforce, execute on, or exercise rights or remedies with respect to any lien, judgment, right of first refusal, or similar rights, or discovery in or under the guise of any court other than this Court, or otherwise impeding, impairing, preventing, prejudicing or interfering with these foreclosure proceedings; and

f. Doing any act that will or may impair, defeat, divert, prevent or prejudice the preservation of the Property (including the Rents, Issues, and Profits thereof), or Plaintiff's interest in the Property, and said Rents, Issues, and Profits and income.

28. If funds are needed to finance immediate repairs, management, and security at the Property and to finance the Receivership (collectively, Repair and Receiver Expenses), then:

a. The Receiver will first draw funds from the collected rents for the Repair and Receiver Expenses;

b. If additional funds are needed for Repair and Receiver Expenses, the Receiver may request monetary advances from Borrower in accordance with its Loan, Note, Security Instrument, and Guaranty with Freddie Mac (the Loan Documents);

c. If additional funds are needed for Repair and Receiver Expenses and Borrower fails to provide the requested funds, the Receiver may request monetary advances from Freddie Mac in accordance with the Loan Documents;

d. Freddie Mac may grant or deny the Receiver's requested monetary advances in its sole and absolute discretion;

e. Any agreed monetary advance provided by Freddie Mac pursuant to the Receiver's request shall be deemed the obligation of the Borrower and Guarantors and added to the indebtedness owed to Freddie Mac. Said advance(s) shall be treated as a protective advance pursuant to the terms of the Loan Documents;

f. If, following exhaustion of funds provided to the Receiver, funds are still needed for any Repair and Receiver Expenses, the Receiver must obtain Freddie Mac and FHFA approvals prior to seeking court approval to assert any Receiver's certificates or liens.

g. Any and all of the Receiver's certificates, Receiver's liens, and any other lien granted by Receiver shall be subordinate to any interests of Freddie Mac.

29. Receiver shall not undertake any borrowings, incur any other secured obligations, or suffer or permit any liens or encumbrances on the Property unless authorized by Plaintiff. Plaintiff and Receiver are not liable for any debts or obligations relating to the Property, and/or operation of the apartment complex located thereon, incurred prior to the date of this Order.

30. Within **three (3) business days** following the entry of this Order, Borrower shall provide the Receiver with copies of all existing insurance policies for the Property, the assets of the Receivership Estate, or maintained by Borrower for or with respect to the Property. The Receiver, the retained professional property manager, FHFA, and the

Plaintiff shall each be named as an additional insured or as mortgagee, as their interest may appear on all existing coverages, including property damage, and general liability policies for the Property (collectively referred to as Insurance on Property). The premiums for insurance policies and deductibles for Insurance on Property that become due shall be expenses of the Receivership Estate. The Receiver shall have the right to possess and control all right, title, and interest of Borrower or the insured in and to all proceeds from any claims made or to be made under any insurance policy maintained by Borrower, the Receiver, or any other party with respect to the Property of the Receivership Estate. Except as restricted by Paragraph 31, below, the Receiver shall have the right to modify, amend, or replace any Insurance on Property or obtain additional insurance as the Receiver deems reasonably necessary to protect the Property. The Borrower may not amend, modify, or cancel any existing insurance policy without the written consent of the Receiver, Plaintiff, and/or FHFA. Furthermore, the Receiver is required to obtain written consent from the Plaintiff prior to any such amendment, modification, or cancellation of any existing insurance policy.

31. Separate from Insurance on Property as set forth in Paragraph 30 above, the Receiver shall, at its sole cost and expense, obtain and carry in full force and effect for Receiver and its employees (collectively, Receiver) insurance coverages for (1) professional liability/errors and omissions and (2) fidelity/crime. Such professional liability/errors and omissions coverage will have a minimum per claim coverage amount of five-million-dollars ($5,000,000) and fidelity/crime coverage will have a minimum per claim coverage amount equal to the greater of one-million-dollars ($1,000,000.00) per claim or four (4) months of revenue using the agreed budget for the Property (collectively, these coverages are referred to as Receiver's Business Insurance). To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverage for the services to be performed as determined by the Receiver. Freddie Mac and FHFA shall be named as additional insureds on the Receiver's Business Insurance. Each insurance carrier providing Receiver's Business Insurance and property management insurance, whether admitted or non-admitted, must comply with a

minimum (1) A.M. Best Financial Strength Rating of A- and (2) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than twenty-five-thousand-dollars ($25,000). The premiums for insurance policies and deductibles for all Receiver Business Insurance shall not be expenses of the Receivership Estate. The Receiver will, upon appointment, provide certificates to Freddie Mac evidencing such insurance coverages, and thereafter, upon Freddie Mac's request. The Receiver will promptly notify Freddie Mac of any material change in insurance coverages.

32. Receiver shall, within a reasonable period of time, repay from the Rents, Issues, and Profits collected or received, all funds loaned or advanced pursuant to this Order. Such loans shall constitute an advance of principal on the Loan from Plaintiff to Borrower, and Plaintiff shall have priority over all other creditors for any funds loaned or advanced pursuant to this Order.

33. Upon (a) issuance of a deed following a foreclosure sale, or (b) acquisition of the Property by Plaintiff or any assignee thereof by a deed in lieu of foreclosure, or other means, and without further order of the Court, Receiver, and Receiver's agents, including any property manager or management company in Receiver's employ, shall, within three (3) business days, relinquish possession, and control of the Property, and all books, and records pertaining to the Property, except those Receiver needs to prepare Receiver's final accounting, to (a) the successful bidder at the foreclosure sale, or (b) Plaintiff or its assignee in the event of a deed in lieu of foreclosure.

34. Upon relinquishing possession and control of the Property, Receiver shall be discharged from all responsibilities relating to management and operation of the Property. Receiver shall within a reasonable time thereafter file a final accounting of the receivership, upon approval of which Receiver shall be discharged.

35. Upon relinquishing possession, and control of the Property, and having paid all costs, and expenses of the receivership as authorized by this Order, Receiver shall not pay any net remaining receivership funds to any person until such time as Receiver's final accounting has been approved, and such payment is authorized by the Court.

36. Any liability incurred by, or recourse against, the Receiver for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, or actions in violation of orders of this Court, will be limited in order of priority first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys, other professionals or contractors), second to the Receiver Bond, and third to the Property Funds generated by the Property and received by the Receiver in the course of the Receivership. Any claims or actions asserting liability against the Receiver, or the Receiver's agents, employees, attorneys, other professionals, and contractors of Receiver shall be brought by motion in this action. For the avoidance of doubt, the Receiver and the agents, employees, attorneys, and contractors of Receiver shall have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

37. The cost of the Receiver Bond and any renewals or extensions thereof shall not be an expense of the Receivership Estate paid from Property Funds.

38. The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or the Receivership Estate subject to Freddie Mac's prior approval to the extent such settlement shall affect Freddie Mac's security interests in the Property and all related Freddie Mac interests thereto.

39. The Receiver shall be vested with all the powers and responsibilities of a receiver as provided in this Order, subject to the rights, titles, powers, privileges, and functions of FHFA and Freddie Mac under HERA. Subject to Freddie Mac's and FHFA's rights and powers under this Order and HERA, the Receiver is hereby vested with any and all authority necessary or appropriate to carry out the intent and purpose of this Order, and to operate and maintain the Property and Receivership Estate. FHFA retains all its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator's powers or functions as to Freddie Mac's and the Conservator's interests at issue herein.

40. Notwithstanding any other term of this Order, Freddie Mac, and FHFA as Conservator of Freddie Mac, retain and may exercise without further Court approval any

and all of their rights under the Loan Documents and HERA. The Receiver's powers as set forth in this Order do not in any way diminish Freddie Mac's rights under the Loan Documents or FHFA's rights, powers, functions, and protections as Freddie Mac's Conservator and successor under HERA.

41. Nothing in this Order is intended to interfere with, or adversely affect, any trustee's sale or other exercise of Plaintiff's or FHFA's rights, nor is this Order intended to constitute a waiver of, or election not to proceed with, any commissioner's sale.

42. Receiver is authorized to serve this Order on any financial institutions or other entities that maintain any of Borrower's bank accounts, deposit accounts or similar accounts (or its agents related to the management and operation of the Property) and/or any such accounts for or related to the Property, and any such financial institution or other entity are authorized to take such steps as are necessary to restrain or prevent Borrower (or its agents) from withdrawing, disbursing, distributing, or causing the diversion of any funds, cash, income, deposits in any of Borrower's foregoing accounts, and/or any such accounts for the Property, and are authorized to immediately turn over all funds of Borrower in Borrower's accounts (or its agents related to the management and operation of the Property) and/or any such accounts for or related to the Property, to the Receiver. Any financial institution or other entity maintaining Borrower's accounts (or its agents related to the management and operation of the Property), and/or any such accounts for or related to the Property, are authorized to provide to the Receiver a complete listing of account numbers under the name of Borrower (or its agents related to the management and operation of the Property) and the Property, including accounts previously closed. For each such account, the financial institutions or other entities are authorized to provide the current balance for each account and, upon request by the Receiver, are authorized to provide monthly bank statements (and details of any such transactions as requested) for a period of up to seven (7) years prior to the effective date of this Order.

43. This appointment takes effect upon the filing of the Receiver's bond and not before.

44. Plaintiff shall forthwith attempt to serve a copy of this Order upon the Defendant and file proof of such service of same.

45. This appointment will continue in effect until the Court directs otherwise and the Court reserves the right to modify and supplement this Order from time to time as may be deemed necessary. This Court shall retain jurisdiction and supervision concerning the Receiver, the receivership created by this Order, and the interpretation and implementation of this Order.

**SO ORDERED**, this 28th day of October, 2026.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**